IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LYNN R. ZIOLA, ) | 4:06CV3207 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND ORDER** |
| CENTRAL NEBRASKA ) | |
| REHABILITATION SERVICES, ) | |
| ) | |
| Defendant. ) | |

Central Nebraska Rehabilitation Services ("Central Nebraska") terminated Lynn Ziola's position, perhaps because of downsizing. Ziola brought this suit asserting that she was terminated because of her age and perceived disability in violation of federal and state law. Central Nebraska has moved for summary judgment, and has objected to evidence submitted by Ziola to prove that Central Nebraska's proffered reason for her termination is pretext. Ziola has abandoned her age discrimination claim. As the undisputed facts show that Central Nebraska did not regard Ziola as "disabled," she has failed to prove a prima facie case of discrimination. I will grant Central Nebraska's motion for summary judgment and will deny the objection to Ziola's evidence as moot.

## I. BACKGROUND

The undisputed material facts are set forth below. I do not include those facts relevant to the age discrmination claims, because as more fully explained later, Ziola has abandoned those claims. I do not include those facts relevant to whether Central Nebraska has proffered a legitimate nondiscriminatory reason for her termination, or whether Ziola has established that the stated reason was pretext. As I explain later, Ziola has failed to prove that she was disabled. Ziola's failure to prove the threshold issue in her prima facie case means that I do not reach the question of the reason for

her termination. *Rehrs v. Iams Co.*, 486 F.3d 353, 356 (8th Cir. 2007) (when there is no evidence of direct discrimination, *McDonnell Douglas*[1] burden shifting analysis is used and issues of reason for termination and whether that stated reason is pretext are not reached unless the plaintiff establishes a prima facie case).[2]

    1.    Ziola was born March 16, 1962. (Filing 26-2 (Ziola Dep.) at 14:17-18.)

    2.    Ziola began employment at Central Nebraska on August 20, 1995. (Filing 26-2 (Ziola Dep.) at 74:25-75:2.)

    3.    Ziola has had a lifting restriction of 35 pounds since 1994. (Filing 26-2 (Ziola Dep.) at 30:18-21.)

    4.    Ziola informed Central Nebraska of her lifting restriction in 2004 when Central Nebraska asked if she had one. (Filing 26-2 (Ziola Dep.) at 76:7-20.)

    5.    Ziola presented Central Nebraska with her lifting restriction in a doctor's note dated March 22, 2004. (Filing 26-2 (Ziola Dep.) at 141:20-142:18 and Ex. 8 to Ziola Dep (filing 26-2 at CM/ECF page 17.)

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).

[2] If Ziola had established a prima facie case, her failure to controvert the facts in the manner specifically required by NECivR56.1(b)(1) would have been problematic, as Ziola's noncompliant response asserted that there were facts in dispute as to pretext. I suggest that Ziola's counsel carefully read and comply with NECivR 56.1, because the next time he opposes a motion for summary judgment in any case before me, I will not hesitate to find that properly referenced facts in the movant's statement of facts are deemed admitted if the opposing party's response fails to "address each numbered paragraph in the movant's statement and, in the case of any disagreement, [fails to] contain pinpoint references to [the record] . . . ." NECivR 56.1.

6.	Ziola had right carpal tunnel release surgery in 2002 and received a full release to return to work with no restrictions. (Filing 26-2 (Ziola Dep.) at 33:1-11; 77:8-21.)

7.	Ziola had left carpal tunnel release surgery in 2005 and received a full release to return to work with no restrictions. (Filing 26-2 (Ziola Dep.) at 33:19-34:1.)

8.	Ziola's ADA claim is based on her allegation that Central Nebraska perceived her to have a disability with her hands and back. (Filing 26-2 (Ziola Dep.) at 101:22-102:9; filing 27-2 (Br. in Opp. of Def.'s Mot. for Summ. J.) at 3.)

9.	Ziola claims Central Nebraska perceived her to have a disability based upon her allegation that she was told that she was being laid off because she could not massage because of her hands and could not lift patients because of her back. (Filing 26-2 (Ziola Dep.) at 102:2-103:24.)

10.	Ziola claims Central Nebraska perceived her to have a disability with her back because she had a lifting restriction. (Filing 26-2 (Ziola Dep.) at 102:2-103:24.)

11.	Ziola was laid off on February 18, 2005. (Filing 26-3 (Kulus Aff.) at ¶7.)

12.	Ziola alleges that at the time she was laid off, Central Nebraska employee Scott Erikson[3] stated that "I would no longer have a position there because my – I was unable to massage because of my hands and I could not lift patients

---

[3]This name is spelled as "Erickson" in Ziola's deposition and "Erikson" in Central Nebraska's brief. I adopt Central Nebraska's spelling.

because of my back, so he said that there were no other positions available. If one came available, they would let me know." (Filing 26-2 (Ziola Dep.) at 103:19-24.)

## II. ANALYSIS

Summary judgment on the merits should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate its allegations with "'sufficient probative evidence [that] would permit a finding in [its] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no

genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The complaint asserts both disability and age discrimination claims. Central Nebraska's brief asserts that there is no fact from which an inference of age discrimination can be drawn, and it has submitted facts to support its assertion that there was no age discrimination. (Filing 24 (Br. in Supp. of Def.'s Mot. for Summ. J.) at 13-14.) Ziola's brief nowhere addresses her age discrimination claim. Ziola has abandoned her age discrimination claim by failing to brief it. NECivR 39.2(c) ("[F]ailure to submit a brief or to discuss an issue in the brief submitted is an abandonment of that party's position on any issue not briefed or discussed."). Thus I address only the disability discrimination claims. Those claims are brought under the Americans With Disabilities Act ("ADA"), 29 U.S.C. §§ 12101 *et seq.* and Neb. Rev. Stat. Ann. § 48-1104 (LexisNexis 2007), a section of the Nebraska Fair Employment Practice Act ("NFEPA").

In order to establish a prima facie case of disability discrimination under Title I of the ADA[4], a plaintiff must show that (1) she has a "disability" within the meaning of the ADA, (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. *McPherson v. O'Reilly Automotive, Inc.*, 491 F. 3d 726, 730 (8th Cir. 2007).

---

[4]Disability discrimination claims under NFEPA are analyzed under the same framework as claims brought under the ADA. *Rehrs*, 486 F.3d at 356 n.4.

Ziola asserts that Central Nebraska "perceived" or "regarded" her as having a disability. "Disability" within the meaning of the ADA includes being "regarded as" having a "physical or mental impairment that substantially limits one or more . . . major life activities". 42 U.S.C. § 12102(2)(C). "'Regarded as' disability can occur in two ways: (1) the employer mistakenly believes that the employee has an impairment (which would substantially limit one or more major life activity) or (2) the employer mistakenly believes that an *actual* impairment substantially limits one or more major life activity." *Wenzel v. Missouri-American Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005) (emphasis in original)(quoting *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). In other words, an employer's perception that an employee has particular medical conditions or restrictions is not a perception of *disability* unless those conditions or restrictions constitute a substantially limiting impairment. *Breitkreutz v. Cambrex Charles City, Inc.*, 450 F.3d 780, 784 (8th Cir. 2006) ("Regarding an employee as having a limitation that is not itself a disability cannot constitute a perception of disability.").

The undisputed facts show that Central Nebraska knew that Ziola had two carpal tunnel surgeries and had a thirty-five pound lifting restriction. Neither carpal tunnel syndrome nor a thirty-five pound lifting restriction constitutes a substantially limiting impairment. *Helfter v. United Parcel Service, Inc.*, 115 F.3d 613, 617-18 (8th Cir. 1997) (plaintiff with carpal tunnel syndrome and lifting limit of ten pounds frequently and twenty pounds occasionally was not disabled, as she was "restricted only from performing jobs that require a substantial amount of sustained repetitive motion and heavy lifting" and was not significantly restricted from performing a class or broad range of jobs); *Gutridge v. Clure*, 153 F.3d 898, 900-01(8th Cir. 1998) (carpal tunnel and cubital tunnel syndromes resulting in permanent forty-five pound lifting restriction did not substantially limit major life activity); *Breitkerutz*, 450 F.3d at 783-84 (restriction from limiting fifty pounds generally and twenty-five pounds frequently was not substantially limiting impairment because lifting itself is not a+

major life activity and lifting restriction did not create inability to perform a broad class of jobs).

Ziola asserts that Central Nebraska regarded her as disabled because at the time she was laid off Scott Erikson stated that "I would no longer have a position there because my – I was unable to massage because of my hands and I could not lift patients because of my back, so he said that there were no other positions available. If one came available, they would let me know." (Filing 26-2 (Ziola Dep.) at 103:19-24.)  Although Central Nebraska denies that Erikson made this statement, this disagreement does not constitute a genuine issue of material fact.  Even if I assume that Erikson made this statement, it at most shows that Central Nebraska regarded Ziola as unable to perform a particular job, which is insufficient to establish  that she had a "disability."  *Brunko v. Mercy Hospital*, 260 F.3d 949, 941-42 (8th Cir. 2001) (employer aware of individual's forty-pound lifting restriction merely perceived individual to be incapable of working at a narrow range of jobs, which was insufficient to establish "regarded as" disability).  Ziola has failed to establish a prima facie case because she has failed to create a genuine issue of fact as to whether Central Nebraska regarded her as disabled.

Central Nebraska asserts that it terminated Ziola because part-time positions were eliminated in a downsizing and that it did not replace her.  (Filing 24 (Br. in Supp. of Def.'s Mot. for Summ. J.) at 3-4, 6.)  Ziola asserts that there was no downsizing, as Central Nebraska hired for a part-time position shortly before her termination, and that she was in fact replaced.  (Filing 27-2 (Br. in Opp. of Def.'s Mot. for Summ. J.) at 3-4.)  This dispute of fact does not preclude the entry of summary judgment, as the facts in dispute are relevant only if I reach the questions whether Central Nebraska articulated a legitimate, nondiscriminatory reason for Ziola's termination and whether Ziola has established that the stated reason was a pretext for disability discrimination.  Ziola's failure to establish a prima facie case means that I need not decide whether Central Nebraska's stated reason for Ziola's

termination was pretext for discrimination. Accordingly, I will deny as moot Central Nebraska's objection to evidence offered by Ziola in opposition to summary judgment (filing 31, objection to certain deposition testimony of Lynn Ziola as to whether her job was "eliminated" or whether she was replaced).

### III.  CONCLUSION

The evidence, viewed in the light most favorable to Ziola, shows that there is no genuine issue of material fact and Central Nebraska is entitled to a judgment as a matter of law. Ziola has failed to establish that she is a person with a disability for purposes of the ADA and NFEPA. Central Nebraska's termination of Ziola, coupled with its awareness of her carpal tunnel surgeries and her thirty-five pound lifting restriction, merely indicates that Central Nebraska regarded Ziola as incapable of working at a particular job and is insufficient to establish that Central Nebraska perceived Ziola to be substantially limited in the major life activity of working.

Accordingly,

IT IS ORDERED that:

1.  Defendant's motion for summary judgment (filing 25) is granted;

2.  Filing 31, Defendant's objection to evidence offered by Plaintiff, is denied as moot; and

3.  Judgment shall be entered by separate order.

October 17, 2007                    BY THE COURT:

                                    *s/Richard G. Kopf*
                                    United States District Judge